# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICOLE VEASLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NEWARK HOUSING AUTHORITY, | : | C.A. No.:_____ |
| JOHNNIE JACKSON, Executive | : | |
| Director, in his official capacity, | : | |
| JOAN ROBERTS, Housing Coordinator, | : | |
| in her official capacity, | : | |
| JACQUELYN BALDWIN, in her | : | |
| official capacity, | : | |
| and DAVID B. MAHANEY, in his | : | |
| official capacity, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

## PRELIMINARY STATEMENT

1.      This action is brought by Ms. Nicole Veasley ("Plaintiff"), a former participant in

the Newark Housing Authority's Housing Choice Voucher Program, who alleges that her

participation was terminated in violation of the United States Housing Act of 1937, as amended

by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f (the "Housing

Act"), and the federal regulations promulgated thereunder, and the Due Process Clause of the

Fourteenth Amendment of the United States Constitution.  Plaintiff seeks declaratory and

injunctive relief directing Defendant Newark Housing Authority ("NHA") to reinstate her to the

Housing Choice Voucher Program and to pay compensatory damages for NHA's violations of

federal and state law.  Plaintiff also seeks an order requiring that NHA cease the practice of using

evidence that was not presented or made available to participants in the Housing Choice Voucher Program in NHA termination hearings.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, in that this action raises a "federal question" arising under the laws of the United States – specifically, the Housing Act, 42 U.S.C. § 1437f.

3.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), in that this action arises under 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's rights under the Constitution and federal law by persons acting under color of state law.

4.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

5.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b), the claims having arisen in the District of Delaware.

## PARTIES

6.     Plaintiff Nicole Veasley is a citizen of the State of Delaware and of the United States.  Plaintiff is currently a resident of New Castle County and became homeless on July 31, 2005, when she was required to vacate the home previously covered by a Housing Assistance Payment Contract between the property owner and NHA.

7.     NHA is a public housing authority that was created under the authority of 31 *Del. C.* §§ 4301 *et seq.*  NHA receives funds from the federal Department of Housing and Urban Development ("HUD") and is obliged to adhere to the regulations promulgated by HUD.  NHA maintains its principal place of business at 313 East Main Street, Newark, Delaware 19711.

8.      Mr. Johnnie Jackson is the Executive Director of NHA. As such, he is responsible for ensuring that NHA and its employees comply with the applicable laws and regulations.

9.      Ms. Joan Roberts is the Housing Coordinator of NHA's Housing Choice Voucher Program. Ms. Roberts was initially responsible for the decision to terminate Plaintiff from the Housing Choice Voucher Program.

10.     Ms. Jacquelyn Baldwin is the Chairperson of NHA's Board of Commissioners. As such, she is responsible for ensuring that NHA and its Executive Director comply with the applicable laws and regulations.

11.     Mr. David B. Mahaney was the hearing officer responsible for conducting the hearing and upholding NHA's decision to terminate Plaintiff's participation in the Housing Choice Voucher Program.

## FACTS

12.     NHA is a local administrator of the United States Department of Housing and Urban Development's Housing Choice Voucher Program and receives federal dollars to administer its programs and to pay subsidies under its public housing and voucher programs.

13.     The Housing Choice Voucher Program provides rental subsidies to tenants who lease rental units from private landlords. Both eligibility for the program and the amount of the subsidy that is paid directly to the landlord are based upon federal guidelines and the family's size and income.

14.     At the time of the hearing, Plaintiff's only source of income was the welfare benefits she received for her two children in the amount of $338 per month.

3

15.     NHA certified that Plaintiff was approved to begin participating in NHA's Housing Choice Voucher Program and occupy a housing unit, effective July 9, 2004. Plaintiff resided at 12 Nathan Hale Court, Newark, Delaware 19711 as an NHA voucher recipient for approximately one year.

16.     NHA, pursuant to a Housing Assistance Payment Contract, made monthly housing assistance payments to Plaintiff's landlord, Lisa Ward, on behalf of Plaintiff. Based on federal guidelines, Plaintiff's share of the monthly rent was determined by her household composition and income, in addition to other factors. In May 2005, Plaintiff's share of the monthly rent was $25.

17.     Plaintiff is otherwise qualified to enter into lease agreements and meets the eligibility criteria for the Housing Choice Voucher Program.

18.     NHA's policy requires that Housing Choice Voucher Program participants with zero or unstable income must re-certify their income every 30 days in person at NHA's offices.

19.     At the time NHA terminated Plaintiff's participation in the Housing Choice Voucher Program, Plaintiff was a full-time student enrolled at Delaware Technical and Community College ("DelTech"). Plaintiff is enrolled to continue her studies in the fall session at the Wilmington campus of DelTech.

20.     DelTech's policy, as stated in its Student Handbook 2003-2005, provides that students are expected to attend class regularly and are responsible for all class work missed regardless of the reason for absence.

21.     After enrolling at DelTech, Plaintiff requested Ms. Roberts to schedule her appointments to verify zero or unstable income on days, such as Friday, when Plaintiff did not have classes.

4

22.     Ms. Roberts refused to accommodate Plaintiff's request for scheduling appointments that would not undermine her school work.

23.     Ms. Roberts sent an appointment notice, which scheduled an appointment with Plaintiff for February 2, 2005, a day on which Plaintiff was out of town.

24.     The scheduling conflict forced Plaintiff to call Ms. Roberts long distance from out of town and reschedule the appointment.

25.     Ms. Roberts scheduled a morning appointment with Plaintiff for March 3, 2005, a day on which Plaintiff had a morning DelTech class.

26.     The scheduling conflict forced Plaintiff to call in advance of the meeting and re-schedule the appointment for the following day, March 4, 2005.

27.     When Plaintiff learned that she could not attend the March 4, 2005 appointment due to her son's therapy session at the A. I. du Pont Hospital for Children, she called Ms. Roberts and rescheduled for the next business day, Monday, March 7, 2005, despite a scheduling conflict with a DelTech class.  Plaintiff attended the March 7 appointment.

28.     Ms. Roberts scheduled a morning appointment with Plaintiff for April 7, 2005, a day on which Plaintiff had a morning DelTech class.

29.     Plaintiff planned to attend the morning appointment, despite a scheduling conflict with a DelTech class.

30.     While traveling to the morning appointment, Plaintiff accidentally locked her keys in her car.  Prior to the time set for the appointment, Plaintiff called and offered to come to NHA once her car was unlocked.  Ms. Roberts instead insisted that the appointment be rescheduled for the following day, April 8.

31.     Plaintiff called to reschedule the April 8 appointment because her mother could not leave the hospital unassisted after surgery. Plaintiff rescheduled for the next business day, April 11, 2005.

32.     On the morning of April 11, 2005, Plaintiff's mother required immediate medical attention and medication due to post-surgery complications. Plaintiff provided her mother with transportation to the surgeon's office and had the necessary prescriptions filled.

33.     Upon returning from the pharmacist and returning her mother to her home, Plaintiff realized she missed the morning appointment.

34.     Upon realizing her oversight, Plaintiff immediately drove to NHA's offices and offered to meet with Ms. Roberts at her convenience.

35.     Ms. Roberts informed Plaintiff that she would not conduct the recertification interview and instead would send a termination letter.

36.     Plaintiff received a letter from Joan Roberts at NHA dated April 11, 2005, notifying her that NHA was terminating her Housing Choice Voucher Program assistance, effective May 31, 2005. NHA's termination notice alleged that Plaintiff had violated the Statement of Family Responsibility of the Housing Choice Voucher Program and NHA's Administrative Policy, because of Plaintiff's failure to attend scheduled appointments.

37.     The April 11, 2005 termination letter gave Plaintiff the opportunity to submit a request for an informal hearing to challenge the proposed termination. The letter stated that a request for an informal hearing must be submitted "within ten (10) calendar days upon date of this notice."

38.     NHA sent Plaintiff's landlord a letter dated April 11, 2005, stating that NHA was terminating Plaintiff's participation in the Housing Choice Voucher Program effective May 31,

6

2005, all Housing Assistance Payments would be terminated and Plaintiff would be responsible for the full rent.

39.     Plaintiff, through a representative of counsel, timely requested an informal hearing on April 20, 2005 by fax and regular mail. In the same April 20, 2005 letter, Plaintiff's representative requested an appointment to review Plaintiff's Tenant History file.

40.     Plaintiff's representative again requested an appointment to review Plaintiff's Tenant History file in a letter dated April 27, 2005.

41.     On April 29, 2005, Plaintiff's representative went to NHA's offices to review Plaintiff's Tenant History file and copy relevant documents.

42.     Mr. Jackson refused to allow Plaintiff's representative access to and copies of the following documents contained in Plaintiff's Tenant History file: all Department of Social Service forms regarding income; all forms certifying zero or unstable income that were signed by Plaintiff; all internal memos regarding missed appointments; all Form HUD-50058 Family Reports, including calculation pages for determining relevant income amounts; all DelTech notices of enrollment; and telephone records of calls between Ms. Roberts and Ms. Veasley.

43.     Mr. Jackson permitted copies to be made of six pages of documents during the April 29, 2005 appointment to review Plaintiff's file: "Notes to the file"; NHA's termination letter to Plaintiff; NHA's termination letter to Plaintiff's landlord, Lisa Ward; NHA's February 8, 2005 final appointment letter; a November 10, 2004 recertification letter; and a November 23, 2004 recertification letter.

44.     Mr. Jackson informed Plaintiff's representative that access to documents in Plaintiff's Tenant History file was limited to records of missed appointments and that other documents in the file were not relevant to the hearing. Mr. Jackson also told Plaintiff's

7

representative that Ms. Roberts' phone records were not available because other confidential information was written on them or contained in them.

45.    The informal hearing was held on May 2, 2005.

46.    Mr. David B. Mahaney served as the hearing officer.

47.    Present at the hearing were Plaintiff, Plaintiff's counsel, and Johnnie Jackson. Although she was scheduled to appear, Ms. Roberts could not be present due to a family emergency and Mr. Jackson stated there was no reason to reschedule the hearing.

48.    Mr. Jackson presented NHA's case, calling no witnesses and offering hearsay testimony regarding the allegations contained in Ms. Roberts' April 11, 2005 termination notice and allegations from Ms. Roberts' Notes to the File from January to April 2005.

49.    Mr. Jackson relied upon and testified that NHA's Administrative Plan requires reexamination of families with zero or unstable income every 30 days.  NHA's Administrative Plan had not been made available to Plaintiff's counsel or representative prior to the hearing.

50.    When Plaintiff's counsel requested access to NHA's entire 2004 Administrative Plan for Housing Choice Voucher Program, Mr. Jackson stated that a paper copy could not be provided as it resided in the office computer, but would be sent at a later time.

51.    However, Mr. Jackson refused to transfer a copy of the document onto electronic media as offered by Plaintiff's counsel, or to send an electronic copy of the Plan via e-mail.

52.    Although Mr. Jackson promised to send a paper copy of the Plan, Mr. Jackson has not sent a copy of the Plan in the three months following the hearing.  There was no excuse for this failure, particularly in view of the fact that Plaintiff's counsel had provided his business card to Mr. Jackson and the hearing officer.  The card provided counsel's full name, firm name and address, phone number, fax number and e-mail address.

8

53.     During the hearing, Mr. Jackson testified that Ms. Roberts typically sends out notices of appointments at NHA 14 days in advance of an appointment, but could not produce a written procedure or record to substantiate his assertion.

54.     Mr. Jackson stated that it was "too difficult" to set up a recurring schedule to accommodate a student's schedule, such as Plaintiff's.

55.     Plaintiff testified in her own defense at the hearing.  Plaintiff stated that she typically received the monthly notice of her zero-income appointment just two to three days before the appointment – not 14 days as Mr. Jackson had testified.

56.     Plaintiff explained that she was unable to meet with Ms. Roberts on April 8 and 11, 2005 due to a family emergency – her mother's unforeseen surgery and complications. Plaintiff provided a note from her mother's doctor to demonstrate that she missed the appointment because of a medical emergency.

57.     Plaintiff also provided a receipt from the locksmith who unlocked Plaintiff's car when the appointment had to be rescheduled after Plaintiff accidentally locked her keys in the car.

58.     Notwithstanding the evidence indicating the reasons for the missed appointments, the hearing officer, Mr. Mahaney, issued a decision, by letter dated May 4, 2005, which stated:

> I am concurring with Ms. Roberts [sic] determination to terminate your Housing Choice voucher and rental assistance for the following reason:
>
> Upon reviewing the file I see that you ported in to Newark Housing Authority from New Castle De.  Upon "porting in" Ms. Roberts reviewed with you your Family Obligations for continued assistance, in addition to the income reporting requirements, as detailed in Newark's Administrative Plan.  You acknowledged receipt and understanding of the appointment and reporting requirements by signing these documents with Ms. Roberts, prior to being placed under Housing Assistance.

9

Upon review of Ms. Roberts [sic] phone records, I see that in March 05 an appointment was made by Ms. Roberts, which you rescheduled twice and finally came in, then in April 05 an appointment was made by Ms. Roberts, which you rescheduled, and failed to show - then calling later in the day to reschedule for 9 am the following day. Instead of keeping that appointment you went into the office at 1:35 pm. Ms. Robert [sic] was already involved with other appointments and could not see you! Thus you violated the appointment requirements, resulting in termination of your housing assistance benefits.

59.    On June 2, 2005, Plaintiff's counsel wrote to Mr. Jackson to object to the procedural deficiencies in the hearing process and to the hearing officer's resulting decision. In particular, Plaintiff's counsel objected to the hearing officer's reliance on and references to documents, such as phone records, NHA's Family Obligations documents with Plaintiff's signature, and Delaware Department of Social Services documents, which NHA had refused to provide to Plaintiff or her counsel on April 29, 2005 and again on May 2, 2005. Plaintiff's counsel requested that NHA reinstate Plaintiff's housing voucher, or, in the alternative, extend housing assistance while NHA arranged a hearing that did not suffer from due process deficiencies. Mr. Jackson declined to consider either request.

60.    In late May 2005, Plaintiff received a letter from her landlord stating that her lease would not be renewed and, therefore, would expire on July 31, 2005.

61.    Plaintiff, not able to afford market-rate rent for an apartment, was forced to vacate her unit on July 31, 2005.

62.    As a result of NHA's termination, Plaintiff may be ineligible to receive another federally assisted housing voucher through any housing authority for five years.

### COUNT I
### Violations of Housing Act, Related Regulations, and Administrative Plan
### (Against All Defendants)

63.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

64.     Defendants' termination of Plaintiff from the Housing Choice Voucher Program violates 42 U.S.C. § 1437f, and the applicable federal regulations, 24 C.F.R. §§ 982.551, 982.552, and NHA's Administrative Plan.

## COUNT II
### Violations of Housing Act Regulations and Administrative Plan
### (Against All Defendants)

65.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

66.     All Defendants are required to ensure that NHA's informal hearing procedures comply with the discovery requirements of 24 C.F.R. § 982.555(e)(2) and NHA's Administrative Plan.  Defendants violated the regulations and the Administrative Plan by denying Plaintiff the opportunity to examine documents that were directly relevant to the hearing, such as NHA's Administrative Plan, phone records, and all internal memos regarding missed appointments, etc. Defendants further violated the regulations and the Administrative Plan by denying Plaintiff the opportunity to examine and copy such documents, and by relying upon such documents at the hearing.  24 C.F.R. § 982.555(e)(2).

## COUNT III
### Violations of Housing Act Regulations and Administrative Plan
### (Against Defendant David B. Mahaney)

67.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

68.     Defendant is required to regulate the conduct of the hearing in accordance with NHA's informal hearing procedures and the requirements of 24 C.F.R. § 982.555(e)(4)(ii) and NHA's Administrative Plan.  Defendant violated the regulations and the Administrative Plan by permitting the introduction of documents not provided to Plaintiff's counsel prior to the informal hearing, and by relying upon such documents and on hearsay evidence.  24 C.F.R. § 982.555(e)(4)(ii).

11

## COUNT IV
### Violations of Housing Act Regulations and Administrative Plan
### (Against Defendants NHA, Jacquelyn Baldwin, Johnnie Jackson, and David B. Mahaney)

69.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

70.     Defendants NHA, Jacquelyn Baldwin, Johnnie Jackson, and David B. Mahaney are required to ensure that the conduct of informal hearings is in accordance with NHA's Administrative Plan and the federal regulations set forth at 24 C.F.R. § 982.555(e)(5). Defendant David B. Mahaney violated 24 C.F.R. § 982.555(e) by failing to conduct Plaintiff's hearing in accordance with NHA's Administrative Plan and the federal regulations and failing to permit Plaintiff the opportunity to cross-examine the testimony of Ms. Roberts. Defendants NHA, Jacquelyn Baldwin, and Johnnie Jackson violated the federal regulations through their failure to ensure that Plaintiff's hearing was conducted in accordance with NHA's Administrative Plan and the federal regulations. 24 C.F.R. § 982.555(e)(5).

## COUNT V
### Violation of Housing Act Regulations
### (Against Defendant David B. Mahaney)

71.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

72.     Defendant David B. Mahaney violated 24 C.F.R. § 982.555(e)(6) by failing to comply with the regulation's requirements for the issuance of a written decision after an informal hearing because his factual determinations were based upon evidence, such as telephone records, Department of Social Services records, NHA documents signed by Plaintiff, and NHA's Administrative Plan, which was presented to him after the hearing.

## COUNT VI
### Violations of Housing Act Regulations
### (Against Defendants NHA, Jacquelyn Baldwin, and Johnnie Jackson)

73.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

12

74.    Defendants NHA, Jacquelyn Baldwin, and Johnnie Jackson are required to ensure that NHA's informal hearing procedures, including those governing the hearing officer's evidentiary basis for written decisions, comply with the requirements of 24 C.F.R. § 982.555(e)(5)-(6). Defendants NHA, Jacquelyn Baldwin, and Johnnie Jackson violated 24 C.F.R. § 982.555(f) by allowing the hearing officer's written decision to stand when it clearly failed to comply with the federal regulations governing the issuance of a hearing decision. 24 C.F.R. § 982.555(e)(6).

## COUNT VII
### Violation of Due Process Clause, 14th Amendment, U.S. Constitution, and 42 U.S.C. § 1983 (Against Defendants NHA, Jacquelyn Baldwin, Johnnie Jackson, and David B. Mahaney)

75.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

76.    Defendants acted under color of state law when they participated in and exercised oversight over Plaintiff's informal hearing.

77.    Defendants' failure to ensure that Plaintiff's informal hearing was conducted in accordance with the federal regulations, their failure to ensure that the written decision that resulted from the informal hearing complied with the federal regulations, and their failure to overturn a flawed informal hearing decision violated Plaintiff's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Assume jurisdiction over this action;

B.    Find and declare that Defendants' actions and failures to act:

   (1)    violate the Due Process Clause of the United States Constitution;

13

(2)    violate the Housing Act, 42 U.S.C. § 1437f, as amended, and the applicable federal regulations, 24 C.F.R. §§ 982.551 *et seq.*;

(3)    violate the Administrative Plan of NHA by, among other things, introducing and relying on documents not provided to Plaintiff's counsel prior to the informal hearing, relying solely on hearsay evidence, and conferring with the hearing officer for the purpose of exchanging additional information regarding Plaintiff's alleged violations after the hearing had been concluded;

(4)    violate Plaintiff's Due Process rights under federal law by failing to ensure that NHA's informal hearing procedures and written decision comply with federal law; and

(5)    violate Plaintiff's rights under 42 U.S.C. § 1983;

C.    Issue preliminary and permanent injunctive relief in the form of an order, effective June 1, 2005, requiring Defendants to reinstate Plaintiff's participation in NHA's Housing Choice Voucher Program "in good standing," so that Plaintiff may remain in NHA's Housing Choice Voucher Program or "port" into a neighboring Housing Choice Voucher Program without having to wait five years to become eligible and then perhaps longer depending on the length of the waiting list for housing;

D.    Issue permanent injunctive relief in the form of an order requiring Defendants to cease the practice of basing NHA decisions upon documents, communications, and other evidence without providing access to such materials and information to persons upon their request prior to the informal hearing;

E.    Award Plaintiff compensatory damages;

F.    Award Plaintiff reasonable attorneys' fees and costs; and

G.    Award Plaintiff any such other relief as the Court may deem just and proper.

14

**DATED:  August 22, 2005**

_Deborah I. Gottschalk_
Deborah I. Gottschalk, Esq. (I.D. No. 3393)
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, Delaware  19801
302-575-0660


_Karen L. Valihura_
Karen L. Valihura, Esq. (I.D. No. 2789)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
302-651-3000

Counsel for Plaintiff